UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Grace Kalinowski          :

    Plaintiff,          :     Case No. 3:13-CV-2291

    v.          :

Gina Kotowski and Plymouth     :
Borough Police Department
                     : Judge Richard P. Conaboy

    Defendants.          :

---

Memorandum

We consider here a Motion for Summary Judgment (Doc. 14) filed by Defendant Gina Kotowski ("Defendant" or "Kotowski") on August 24, 2014.  This motion has been briefed fully (Doc. 16, 18, and 19) by the parties and is ripe for disposition.

**I.   Background.**

This lawsuit arises from a physical encounter between Defendant Kotowski, then an officer of the Plymouth Borough Police Force, and Plaintiff Grace Kalinowski ("Plaintiff" or "Kalinowski") on April 22, 2012.[1]  This encounter occurred in the yard of the home in which Plaintiff resides.  Plaintiff's yard abuts the parking lot of a Turkey Hill convenient store at 5 W. Main Street in Plymouth, Pennsylvania.  Defendant Kotowski was summoned by 911

---

[1] The factual recitation in this Memorandum is undisputed as derived from the Plaintiff's Complaint, the parties' concise statements of material fact (Docs. 15 and 17) and by cross-referencing the depositions of both parties, Officer Shawn Reilly, and Vicki Long, Plaintiff's next door neighbor and witness to the events in question.

1

radio dispatch to respond to a report from that address that a female was acting strangely, throwing objects into the parking lot of the Turkey Hill convenient store, creating a general commotion, and bothering the store's customers.  (Deposition of Gina Kotowski, Doc. 17-2 at 13-14).  Defendant Kotowski's testimony in this regard is corroborated by that of Vicki Long, an eyewitness to the entire episode.  (Deposition of Vicki Long (Doc. 17-3 at 13-17).

Defendant Kotowski had been dispatched to disturbances at the Kalinowski residence on approximately ten other dates prior to April 22, 2012 and was aware that Plaintiff Kalinowski was in some way mentally unstable.  (Doc. 17-2 at 12-13).  When Officer Kotowski arrived at the Turkey Hill convenient store she saw various items strewn about the Turkey Hill parking lot and Plaintiff Kalinowski walking back and forth in her yard screaming in a different language (which the officer presumed to be Polish). (Doc. 17-2 at 16-17; Doc. 17-3 at 14-17)(Doc. 17, ¶ 5).

Officer Kotowski attempted to engage Kalinowski in conversation, but Kalinowski was unreceptive, uncooperative and greeted Kotowski with obscenities.  (Doc. 17-2 at 20-21; Doc. 17-3 at 22-25).  Officer Kotowski determined to arrest Kalinowski because "...at this point she (Kalinowski) had been a nuisance enough to the Turkey Hill".  (Doc. 17-2 at 22).  When Officer Kotowski attempted to enter Kalinowski's yard, Kalinowski grabbed the swinging gate and repeatedly blocked Officer Kotowski's attempt

to enter and struck her with the gate several times.  (Doc. 17-2 at 25-26; Doc. 17-3 at 23-26)(Doc. 17, ¶ 3).  Officer Kotowski told Plaintiff at least twice to back away from the gate or she would be tased.  (Doc. 17-2 at 43; Doc. 17-3 at 25-26)(Doc. 17, ¶ 4).  When Plaintiff Kalinowski refused to follow Officer Kotowski's orders, Officer Kotowski deployed her taser striking Plaintiff Kalinowski in the abdomen.  (Doc. 17-2 at 43-44; Doc. 17-3 at 26).

After Plaintiff Kalinowski was tased, Officer Shawn Reilly of the Larksville Police Force arrived on the scene and handcuffed Plaintiff Kalinowski.  (Doc. 17-2 at 33; Doc. 17-4 at 16-17).  Officer Reilly arrived because Officer Kotowski had made a radio call to the 911 dispatcher requesting assistance.  (Doc. 17-2 at 25; Doc. 17-4 at 15).  Officer Kotowski testified that she had no idea when the assistance would arrive and that she was unaware that Reilly had arrived on the scene when she deployed the taser against Plaintiff Kalinowski. (Doc. 17-2 at 26 and 33).

After Plaintiff Kalinowski had been subdued, Officer Kotowski summoned an ambulance.  (Doc. 17-2 at 40).  Officer Kotowski accompanied Plaintiff Kalinowski to the hospital and, after speaking to the physicians that examined her, determined that "the hospital was the place for Grace, not jail."  (Doc. 17-2 at 39).  Physicians at Wilkes-Barre General Hospital examined Plaintiff Kalinowski and referred her to First Hospital for a mental health evaluation pursuant to 50 P.S. § 7302(a)(2).  (Doc. 17-5 at 78-81;

Doc. 17-2 at 40).

Plaintiff's Complaint alleges that she suffered "severe injuries" (Doc. 1 at 4-5), but she has produced no evidence of these injuries nor any records relating to treatment for them. Plaintiff seemed to testify at her deposition that she had a broken rib and liver damage that the physicians "hid" from her.  Whether that was actually her testimony is unclear because of her imprecise use of English and the generally incoherent nature of her testimony (Doc. 17-5 at 73-79).  Due to her failure to produce any medical records indicating that a rib or her liver was injured in her encounter with Officer Kotowski, the Court places little credence in her allegations of injury.

## II.  **Summary Judgment Standard.**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  *Kaucher v. County of*

*Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted).  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Id.* at 324.

 "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

5

**III. Legal Analysis.**

Plaintiff's complaint initially comprised five counts. Plaintiff ultimately withdrew her claim for intentional infliction of emotional distress against Officer Kotowski and both claims against the Plymouth Police Department.  (Doc. 18 at 6).  The two remaining claims, both directed at Officer Kotowski are: (1) Count I alleging an unreasonable seizure and violation of Plaintiff's due process rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983; and (2) Count III alleging the use of excessive force in derogation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution. We shall consider these claims in turn.

**A.    Plaintiff's Unreasonable Seizure Claim.**

Plaintiff asserts that her procedural due process rights were violated in that Officer Kotowski ultimately did not cite Plaintiff for disorderly conduct.  (Doc. 18 at 5).  Plaintiff contends that because Officer Kotowski did not speak to bystanders about Plaintiff's conduct, Officer Kotowski "had no probable cause to support the arrest of the Plaintiff for disorderly conduct." (Id.).

Plaintiff's argument overlooks the undisputed fact that she was never cited for disorderly conduct.  It also ignores the established fact that she was creating a public disturbance by engaging in bizzare and tumultuous behavior as personally observed by Defendant Kotowski (Doc. 17-2 at 14-21;) and as corroborated by

Officer Reilly (Doc. 17-4 at 14-17) and Vicky Long (Doc. 17-3 at 12-24).[2] Plaintiff's argument that Officer Kotowski violated Plaintiff's due process rights by ultimately exercising discretion to take her for a mental health appraisal rather than charge her criminally states no due process violation.  Officer Kotowski testified that she felt threatened by Plaintiff (Doc. 17-2 at 12), that she believed Plaintiff's conduct constituted a "risk to herself and others" (Id. at 27 and 46), and that, while she had dealt with Plaintiff on numerous other occasions, Plaintiff's demeanor on the date in question was unlike anything she had previously witnessed.  (Id. at 17).  Moreover, Officer Kotowski's judgment that Plaintiff required medical treatment was ultimately ratified when physicians at Wilkes-Barre General Hospital referred Plaintiff to First Hospital for psychiatric treatment.

Considering the totality of the circumstances, Officer Kotowski's decision to transport Plaintiff for a mental health evaluation was utterly reasonable and in no way violative of any

---

[2] The Pennsylvania Disorderly Conduct Statute provides, in pertinent part: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1)     engages in fighting or threatening, or in violent or tumultuous behavior;

(2)     makes unreasonable noise:

(3)     uses obscene language, or makes an obscene gesture; or

(4)     creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."  18 Pa. C.S.A. § 5503(a).

7

right of due process.  When a person exhibits bizzare behavior that is personally observed by a police officer, that police officer is afforded an adequate basis for taking such a person into custody pursuant to the Pennsylvania Mental Health Procedures Act, 50 P.S. § 7302(a)(2), and that police officer is insulated against a Section 1983 claim based upon due process considerations.  Janicsko v. Pellman et al., 774 F. Supp. 331, 340-41 (M.D. Pa. 1991); affirmed 970 F.2d. 899(3d Cir. 1992).  The Court finds that Officer Kotowski's decision to take Plaintiff into custody on April 22, 2012 was in all aspects reasonable and consistent with established law.

**B.   Plaintiff's Excessive Force Claim.**

Plaintiff asserts that Officer Kotowski's use of the taser against her constituted excessive force that was violative of her Fourth Amendment rights and, due to Officer Kotowski's status as a state actor, 42 U.S.C. § 1983.  (Doc. 18 at 3).  Plaintiff does acknowledge that whether the use of a taser constitutes excessive force is fact specific and that case law related to the use of a taser is in the developmental stage.  (Id.).

Plaintiff characterizes her activity on the date in question as "pacing in her backyard and speaking Polish to herself" and asserts that she posed no harm to herself or a third party. (Id at 4).  This rather benign and charitable description of her activities is starkly contradicted by Defendant Kotowski, Officer

Reilly and Vicky Long as particularized above and by her own admission.  (Doc. 17, ¶ 5). Nevertheless, Plaintiff questions the reasonableness of Officer Kotowski's use of the taser and maintains that she "should have waited for her backup to arrive and use the passage of time to defuse the situation."  The Court cannot agree.

The use of excessive force constitutes an unlawful "seizure" under the Fourth Amendment.  Graham v. Connor 490 U.S. 386, 395 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d. Cir. 2004).  Yet, as Plaintiff indicated in her brief, whether excessive force has been used in a given situation is heavily fact-dependent.  The standard for analyzing an excessive force claim is an objective one: "the conduct must be evaluated 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Graham, supra, at 396.  The Court's evaluation of an excessive force claim must "embody the allowance for the fact that police officers are often forced to make split-second judgments - - in circumstances that are often tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation."  Id. At 396-97. The Court "must determine the objective 'reasonableness' of the challenged conduct, considering the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  Other factors include 'the duration of

9

the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officer must contend at one time.'" Couden v. Duffy, 446 F.3d, 483, 496-97 (3d. Cir. 2006)(internal citations omitted).

In the case sub judice, Officer Kotowski, a solitary officer confronted by a highly agitated, obviously volatile and aggressive person who refused to accede to repeated commands to stop her tumultuous behavior, had to make a difficult decision regarding the degree of force to be used.  Adding complexity to the situation was the presence of the suspect's adult daughter.  Applying, as the Court must, the objective standard required by Graham, supra, we conclude that a reasonable police officer confronted with the situation faced by Officer Kotowski on April 22, 2012 could conclude that the suspect was potentially dangerous to herself or others and required apprehension.  Beyond that, a reasonable police officer could certainly have concluded that it was both prudent and humane to employ the taser in making the arrest.  Officer Kotowski's explanation as to why she opted to employ the taser instead of grappling with Plaintiff Kalinowski, using her baton, or employing pepper spray has the ring of logic.  (Doc. 17-1 at 40-42).  Concomitantly, a reasonable police officer in Officer Kotowski's situation could well have considered the various types of force available to effect the arrest and concluded that the

taser was the safest option for all concerned.[3]

Plaintiff cites three cases, each of which is factually distinguishable from the instant case, in support of her argument that Officer Kototwski's use of the taser constituted excessive force.  Two of these are decisions from outside our circuit.  The first of these, Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992), involved a situation where police officers employed a taser against a suspect who confronted them with a knife in each hand. The officers in Russo were actually exonerated for their use of the taser during that encounter, thus making Plaintiff's citation to Russo somewhat curious.  The second case, Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009) concerned a situation in which a woman who was a mere passenger in a car driven by a man who was ultimately charged with an open container violation was tased, dragged from the car and handcuffed by one of the three officers present for refusing to immediately terminate a telephone call she had placed to 911.  The degree of force used in Brown was so unnecessary and clearly excessive to the situation that Brown is not remotely analogous to the instant case.

The final case Plaintiff offers in support of her excessive force argument is a decision from our own district court, Shultz v. Carlisle Police Department, 706 F.Supp. 2d. 613 (M.D.Pa. 2010,

---

[3] It is beyond obvious that it would have been utterly unreasonable for Officer Kotowski to grapple with Plaintiff Kotowski in her highly agitated state.  The possibility of Plaintiff Kalinowski gaining control of the officer's firearm was very real and could have had horrible consequences.

Munley, J.). Like Brown, ante, Shultz involved a situation where the use of force and the degree of force employed required submission of the case to a jury.  In Shultz, a man who had suffered an epileptic seizure in a restaurant and who remained sitting there in a sort of stupor was confronted by two officers, one of whom tased him six times when he refused medical assistance. Here again, the reasonableness of the police action and the degree of force used was starkly different from the actions of Officer Kotowski in this case.  Thus, the utility of Shultz to Plaintiff Kalinowski is greatly diminished.

Having fully considered Plaintiff's argument, the Court concludes that the undisputed facts in this case reveal that Officer Kotowski's use of force and the degree of force she employed were appropriate to the situation and, as required by Graham and its progeny, objectively reasonable.  Accordingly, Plaintiff's excessive force claim must be rejected.

C.    **Qualified Immunity.**

Defendant Kotowski also raised the defense of qualified immunity in her brief (Doc. 16 at 10-11).  Plaintiff has not provided any response to that argument.  While it is not altogether necessary to address the question of qualified immunity in light of our previously expressed finding that Defendant Kotowski did not use excessive force, the Court is compelled to add that, even had a finding of excessive force been made, the doctrine of qualified

immunity would constitute a complete defense in this case.

The test for determining whether qualified immunity attaches to a police officer's actions is articulated in Saucier v. Katz, 553 U.S. 194 (2001). The Saucier test has two prongs: (1) whether the Plaintiff's federally protected rights are violated and (2) whether it would have been clear to a reasonable police officer that his conduct was unlawful in light of "clearly established" law. Id. at 201-02. The Saucier test is conjunctive. If the police officer can show that either prong does not apply, immunity attaches. Reedy v. Evanson, 615 F.3d. 197, 224 (3d. Cir. 2010).

In light of the developing state of the law regarding the use of tasers and the fact that their use has been both sanctioned and proscribed in a wide variety of cases, a reasonable police officer in Defendant Kotowski's shoes would not have perceived that employment of a taser to subdue an agitated and aggressive party such as the Plaintiff was per se violative of "clearly established" law as required by Saucier, supra. Consequently, even had the Court concluded that Defendant Kotowski had used excessive force, she would have prevailed as a matter of law under the doctrine of qualified immunity.

**IV.  Conclusion.**

For all the foregoing reasons, the Court has determined that Defendant Kotowski's Motion for Summary Judgment (Doc. 15) must be granted because no material fact is in dispute and no reasonable

13

juror could conclude that Defendant Kotowski either (1) violated Plaintiff's due process rights when she arrested her or (2) used excessive force to accomplish that arrest.  An Order consistent with this opinion will be filed contemporaneously herewith.

BY THE COURT

S/Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

Dated: October 30, 2014

14